CHARLES S. SCHOLEN, as Limited Administrator c. t. a., etc., of FREDERICK B. AEBLY, Deceased, Plaintiff, v. GUARANTY TRUST COMPANY OF NEW YORK, Defendant.

Supreme Court, Special Term, New York County, July 3, 1941.

Edward A. Scott, Jr., for the plaintiff.

Davis, Polk, Wardwell, Gardiner & Reed [Otis T. Bradley, Russell S. Coutant and Andrew Y. Rogers of counsel], for the defendant.

WALTER, J. According to the allegations of the complaint, a will which named defendant as executor thereof was placed in the custody of defendant for safekeeping in 1927, the testator

died in 1933, his estate was administered and distributed as an intestate estate and the administrator's accounts were judicially settled in 1935, defendant deposited the will in a Surrogate's Court with a renunciation of the executorship in 1937, and the will was probated and plaintiff was appointed administrator with the will annexed in 1940. By this action plaintiff seeks to recover damages which he asserts were sustained by him as administrator *c. t. a.* " and/or the legatees " in consequence of defendant's alleged negligence in not promptly presenting the will for probate. Defendant moves to dismiss the complaint as not stating a cause of action.

The complaint alleges that defendant received the will for safekeeping with knowledge that it was or purported to be the testator's will and that defendant was therein designated as executor and trustee thereof, and that defendant did nothing to keep itself informed as to whether the testator was dead or alive. It also alleges that the fact of his death was known to defendant prior to the time the estate was distributed " or by the exercise of reasonable care and prudence should have been known to the defendant." Such alternative allegation plainly is not an allegation that defendant did in fact know of the testator's death. It is at most an allegation that defendant was under a duty to exercise reasonable care and prudence to ascertain whether or not the testator died and that if such reasonable care and prudence had been exercised the fact of death would have been discovered.

The crucial question, therefore, is whether or not one who accepts custody of a will for safekeeping, knowing that the paper accepted is a will which names the custodian as executor, thereby assumes a duty of active vigilance to ascertain when the testator dies.

Counsel have not cited, and the court has been unable to find, any case in any jurisdiction which even discusses that question. Some States have statutes prescribing the duties of custodians of wills, and some cases have arisen under such statutes, but no such statute exists in New York. Where the custodian does not know that the paper of which he has custody is a will, liability has been held not to exist. (*Sawyer* v. *Old Lowell National Bank*, 230 Mass. 342; 119 N. E. 825.) Here, as already noted, knowledge of the nature of the paper is alleged, and upon this motion it of course must be assumed. The question as here presented thus appears to be *res integra.*

The delivery and acceptance of custody of a will for safekeeping constitute a bailment, a species of contract. The parties to the contract, the only persons between whom any relation of contract or duty exists, are the ones who deliver and the ones who accept. An implied term of the contract undoubtedly is that the paper

will be delivered back to the testator when he asks for it, for he has a right to do with it as he pleases so long as he lives, but I see no room for the implication of any promise on the part of the custodian beyond that of keeping the paper safely until delivery back to the testator is requested by him, and certainly it seems quite absurd to suggest that the custodian impliedly promises to maintain vigilant watch over the testator's peregrinations over the earth in order to learn when they cease. Testators undoubtedly would be the first to resent such shadowing of their steps, and they doubtless would show their resentment by promptly revoking the custody of any custodian who was even suspected of attempting it. In the normal course of events, testators keep in closer touch with at least one of those who are or expect to be their legatees than with any other persons, and in the absence of express agreement to the contrary the implication rather is that the testator engages that he will see that at least one of those persons knows the location of his will and will advise the custodian thereof of his death.

As the contract of bailment thus does not confer upon the bailor any right to active vigilance by the bailee in ascertaining whether the bailor be dead or alive, manifestly it cannot be held that the contract confers such right upon the world in general or upon prospective legatees. (See *Ultramares Corp.* v. *Touche*, 255 N. Y. 170.)

Plaintiff argues that by the contract of bailment the bailee impliedly agrees to deliver the will into a Surrogate's Court within a reasonable time after death. I think that is untenable. As the contract imposed no duty of active diligence in ascertaining the fact of death, it necessarily follows that even upon the assumption that the contract of bailment imposes any duty upon the bailee after death that duty is limited to a duty to so deliver the will within a reasonable time after notice of the fact of death. I think further, however, that it is a mistake to say that the contract of bailment itself imposes any duty upon the bailee after the bailor's death. The contract seems to me to be one which by its very nature is terminated by the death of the bailor.

The mere fact of death works important changes. There is no longer a bailor. The thing bailed is transformed from an ambulatory instrument into a muniment of title to property. The bailment, as such, is at an end. The persons entitled to the testator's property then have a right to demand production and probate, not of the ambulatory instrument that was bailed, but of the muniment of their title, and the custodian thereof is under a duty to comply with that demand, but that right and that duty are a new right and a new duty which arise by operation of law and spring from the

State's jurisdiction over decedents' estates. They are not implied terms of the contract of bailment, and before such new duty can be said to exist knowledge or notice of the fact which gives rise to it — the fact of death — must be brought home to the person to be charged with it.

Where the custodian, the erstwhile bailee, is the one named as executor, it undoubtedly is his duty to offer the will for probate without waiting for any request from any other party in interest, but that duty also arises, not from the contract of bailment, not from the fact that a living testator had constituted him bailee of an ambulatory instrument, but from the fact that he is the executor of a decedent, and before he can be said to be under that duty knowledge or notice of the fact that gives rise to it — the fact of death — must be brought home to him.

I conclude, therefore, that no duty of active vigilance in ascertaining the fact of the testator's death rested upon defendant, and where no duty of vigilance exists one of course cannot be held liable for not having been vigilant.

It may be noted in this connection that in each of the three statutes as to the duties of custodians of wills which have come to the court's attention the provision is that delivery shall be made after *notice* of the testator's death. (Rhode Island General Laws [1938], chap. 572, § 5; Massachusetts Revised Laws [1902], chap. 135, § 14, quoted in *Sawyer* v. *Old Lowell National Bank, supra,* 344; California Probate Code, § 320, quoted in *Snyder* v. *Security-First Nat. Bank,* 31 Cal. App. [2d] 660, 663; 88 P. [2d] 760, 762.) No Legislature, so far as the court is advised, has placed upon the custodian the duty of active vigilance in ascertaining the fact of death.

Even if a duty of vigilance existed, there is another reason why the complaint is insufficient. The probate of the will establishes that the distributees who received the testator's property received what did not belong to them. There is no allegation that such distributees are insolvent or cannot be found. No fact is alleged which indicates any obstacle to recovering from them what they wrongfully received. In the absence of such allegations, I think no cause of action is stated against defendant.

The motion to dismiss the complaint is granted.